William N. Lobel, Esq. (State Bar No. 93202)
wlobel@tocounsel.com
Christopher J. Harney, Esq. (State Bar No. 322306)
charney@tocounsel.com
THEODORA ORINGHER PC
535 Anton Boulevard, Ninth Floor
Costa Mesa, CA 92626
Telephone: (714) 549-6200
Facsimile: (714) 549-6201

Attorneys for Debtor Dov Charney

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.: 2 :22-bk-11335-VZ |
| DOV ARIEH CHARNEY, | Adversary Case No.: 2:22-ap-01064-VZ |
| Debtor and Debtor-in-Possession. | Chapter 11 |
| | **DEBTOR'S OPPOSITION TO JUDGMENT CREDITORS' MOTION TO REMAND STATE COURT ACTION TO CALIFORNIA SUPERIOR COURT** |
| P STANDARD GENERAL LTD., and STANDARD GENERAL MASTER FUND, L.P., | Date:   April 21, 2022 |
| Judgment Creditors, | Time:   11:00 a.m. |
| vs. | Place:  Courtroom 1368 |
| DOV CHARNEY; ART, COMMERCE & MANUFACTURING SOLUTIONS, LLC; and APEX REAL ESTATE MANAGEMENT, LLC, | |
| Judgment Debtors. | |

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ...................................................................................................7

II.   BACKGROUND .....................................................................................................8

III.  ARGUMENT .........................................................................................................10

A.    The Alter-Ego Claims Are Property Of The Estate And This Court Should Defer Ruling Of Remand Motions Pending The Appointment Of A Committee And The Involvement Of The Committee's Counsel...........................10

  1.   As Numerous California Bankruptcy Courts Have Held, The Alter-Ego Claims Are Property Of The Estate Under Section 541 ......................11

  2.   The Cases Relied On By Standard Are Distinguishable And Do Not Support Remand ..........................................................................................14

  3.   The Court Should Defer Determining The Remand Motions To Permit The Committee Of Unsecured Creditors To Be Heard ...................17

B.    Removal Was Proper Under 28 U.S.C. §§ 1334 And 1452(a) Because The Actions Are Patently "Related To" Charney's Bankruptcy Case .........................18

C.    The Notices Of Removal Were Timely ........................................................................19

D.    This Court Should Exercise Jurisdiction On Equitable Grounds. ...........................20

  1.   The effect or lack thereof on the efficient administration of the estate if the court recommends remand. .........................................................21

  2.   Extent to which state law issues predominate over bankruptcy issues. ..................................................................................................................22

  3.   Difficult or unsettled nature of applicable law. ..........................................22

  4.   Presence of related proceeding commenced in state court or other non-bankruptcy proceeding. ........................................................................23

  5.   Jurisdictional basis, if any, other than 28 U.S.C. § 1334. ...........................23

  6.   Degree of relatedness or remoteness of proceeding to main bankruptcy case. ...........................................................................................23

  7.   The substance rather than the form of an asserted 'core' proceeding. .........24

  8.   The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court. ..................................................24

  9.   The burden on the Bankruptcy Court's docket. ..........................................24

10.   The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties. ...............25

11.   The existence of a right to a jury trial. ..........................................................25

12.   The presence in the proceeding of non-debtor parties. ................................26

13.   Comity. ...........................................................................................................26

14.   The possibility of prejudice to other parties in the action. ..........................26

E.   Charney's Bankruptcy Case Was Filed In Good Faith ...........................................27

F.   The Rooker-Feldman Doctrine Is Inapplicable .......................................................27

IV.   CONCLUSION .................................................................................................................28

**<u>TABLE OF AUTHORITIES</u>**

**Page**

<u>Cases</u>

*Ahcom, Ltd. v. Smeding*,
  623 F.3d 1248 (9th Cir. 2010)..................................................................... 14, 15, 16

*CBS, Inc. v. Folks* (*In re Folks*),
  211 B.R. 378 (B.A.P. 9th Cir. 1997)............................................................. 12, 13, 14

In *Kendall v. Turner (In re Turner)*,
  335 B.R. 140 (Bankr.N.D.Cal.2005)............................................................. 11, 12

*In re Abrams*,
  127 B.R. 239 (B.A.P. 9th Cir. 1991)............................................................. 10

*In re Adelphia Communications Corp.*,
  285 B.R. 127, 40 Bankr. Ct. Dec. (CRR) 112 (Bankr. S.D. N.Y. 2002)............... 21

*In re Advanced Packaging & Prod. Co.*,
  426 B.R. 806 (C.D. Cal. 2010)...................................................................... 12, 13, 14

*In re Capriati Construction Corporation, Inc.*,
  No. BAP NV-17-1200-BHTA, 2018 WL 1404439 (BAP 9th Cir. 2018)............... 12, 16, 17

*In re Cedar Funding, Inc.*,
  419 B.R. 807 (B.A.P. 9th Cir. 2009).............................................................. 20

*In re Cytodyn of New Mexico, Inc.*,
  374 B.R. 733 (Bankr. C.D. Cal. 2007)........................................................... 14, 23

*In re Davey Roofing*,
  167 B.R. 604 (Bankr. C.D. Cal. 1994)........................................................... 12

*In re Fietz*,
  852 F.2d 455 (9th Cir. 1988)........................................................................ 19

*In re Howrey, LLP*,
  No. C 13-00981 SBA, 2014 WL 3899309 (N.D.Cal. 2014)............................... 12, 15

*In re Kanter*,
  345 F. Supp. 1151 (C.D. Cal. 1972)................................................................ 7

*In re Mid-Atlantic Res. Corp.*,
  283 B.R. 176 (S.D. W. Va. 2002).................................................................. 25

THEODORA ORINGHER
COUNSELORS AT LAW

*In re Mortgages Ltd.*,
   399 B.R. 673 (Bankr. D. Ariz. 2008) .................................................................................. 19, 26

*In re O'Reilly & Collins*,
   No. BR 12-33016 DM, 2014 WL 460767 (N.D.Cal. 2014) .................................................. 12, 15

*In re Pacheco*,
   616 B.R. 126 (Bankr. D.N.M. 2020) ......................................................................................... 27

*In re Perry*,
   No. ADV. SV-10-01356-GM, 2011 WL 4503166 (B.A.P. 9th Cir. July 8, 2011) ................... 19

*In re Singh*,
   No. 6:14-BK-19919-SC, 2019 WL 1231146 (B.A.P. 9th Cir. Mar. 14, 2019) ........................ 11

*In re Wash. Mut., Inc. Sec. Litig.*,
   No. C09-816 MJP, 2009 WL 3711614 (W.D. Wash. Nov. 2, 2009) ........................................ 22

*Kalb, Voorhis & Co. v. American Financial Corp.*,
   8 F.3d 130 (2d Cir.1993) ............................................................................................................ 13

*Kayne v. Ho*,
   No. LACV0906816JAKCWX, 2013 WL 12120081 (C.D. Cal. Nov. 4, 2013) ......................... 14

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ................................................................................................................... 17

*Miller Ave. Acquisition Partners v. Brady (In re Enter. Acquisition Partners, Inc.)*,
   319 B.R. 626 (9th Cir. BAP 2004) ....................................................................................... 11, 14

*Security Farms v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers*,
   124 F.3d 999 (9th Cir. 1997) ..................................................................................................... 23

*Senorx, Inc. v. Coudert Brothers, LLP*,
   No. C-07-1075 SC, 2007 WL 1520966 (N.D. Cal. May 24, 2007) ........................................... 22

*Shaoxing County Huayue Import & Export v. Bhaumik*,
   191 Cal. App. 4th 1189 (Ct. App. 2011) ............................................................................ 14, 16, 17

*Sherman v. SEC (In re Sherman)*,
   658 F.3d 1009 (9th Cir. 2011) ...................................................................................................... 7

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
   447 B.R. 302 (C.D. Cal. 2010) .............................................................................................. 20, 23

*Stodd v. Goldberger*,
   73 Cal. App. , 141 Cal. Rptr. 67 (1977) .............................................................................. 15, 16

*Stout v. Marshack (In re Stout)*,
  649 F. App'x 621 (9th Cir. 2016) ........................................................... 11

*United States v. Whiting Pools, Inc.*,
  462 U.S. 198 (1983) ............................................................................. 11

**Statutes**

11 U.S.C. § 301 ..................................................................................... 20

11 U.S.C. § 362 ............................................................................... 10, 21

11 U.S.C. § 541 ............................................................................... 11, 12

11 U.S.C. § 1129 .................................................................................... 21

28 U.S.C. § 1452(a) .......................................................................... 18, 19

28 U.S.C. § 157 ......................................................................... 10, 21, 24

28 U.S.C. §§ 1334 .................................................... 2, 18, 19, 23, 26

California Corporations Code § 25400 ................................................. 23

**Rules**

F.R.B.P. Rule 6009 ........................................................................... 10, 11

F.R.B.P. Rule 9027 ........................................................................... 18, 19

Local Rule 9027 ..................................................................................... 19

DEBTOR'S OPPOSITION TO JUDGMENT CREDITORS' MOTION TO REMAND TO SUPERIOR COURT

THEODORA ORINGHER
COUNSELORS AT LAW

1    Debtor Dov Charney ("Charney") hereby opposes the Motion to Remand State Court Action

2    to California Superior Court ("Motion to Remand") filed by Standard General L.P., Standard

3    General Master Fund, L.P. and P Standard General Ltd. (collectively, "Standard") as follows:

4    **I.**    **<u>INTRODUCTION</u>**

5    Fundamental to the Bankruptcy Code is the elimination of the proverbial race to the

6    courthouse, in which the first creditor to enforce its rights gains an advantage over the other creditors

7    by getting to a debtor's assets before other creditors.  "The philosophy of bankruptcy envisions

8    many things but perhaps the elimination of the "Race to the Courthouse" by creditors is paramount."

9    *In re Kanter*, 345 F. Supp. 1151, 1156 (C.D. Cal. 1972), *aff'd*, 505 F.2d 228 (9th Cir. 1974).  Second,

10    administration of a debtor's estate is to be for the benefit of *all* of the debtor's stakeholders and to

11    ensure a ratable distribution for allowed claims holders.  *Sherman v. SEC (In re Sherman)*, 658 F.3d

12    1009, 1015 (9th Cir. 2011).  Third, the Bankruptcy Code is designed to give a debtor the ability to

13    move on with his or her life. As described by the Ninth Circuit, "At the core of the Bankruptcy Code

14    are the twin goals of ensuring an equitable distribution of the debtor's assets to his creditors and

15    giving the debtor a 'fresh start."

16    These goals are typically implemented by having the debtor in possession, a trustee, or a

17    creditors committee – rather than an individual creditor – pursue estate causes of action and claims

18    because they are fiduciaries of the estate.  Thereby recoveries to the estate can potentially benefit

19    all creditors.  Thus, claims against third parties, such as alter-ego or fraudulent transfer claims,

20    should be pursued with the interest of the creditors as a whole guiding the process, rather than having

21    such estate claims pursued by a single party motivated to litigate in a fashion that furthers its own

22    self-interest without regard to the estate's interest.

23    These goals are directly implicated by the relief sought here by Standard with respect to the

24    proceedings that the Debtor has removed to this Court. Here, Standard seeks to add Los Angeles

25    Apparel ("LAA") as a third-party defendant to its judgment based on a purported alter ego and unity

26    of interest between LAA and the Debtor and then to collect for itself from LAA.  Thus, were this

27    Court to remand the removed actions and not to allow an estate fiduciary to prosecute them, Standard

28    would be able to pursue for its own individual benefit alter ego claims that belong to the Debtor's

1    creditor body as a whole.

2        The Bankruptcy Code and equity do not countenance this result.  Removed actions are best

3    handled by the unsecured creditors' committee or other estate fiduciary (if there is no committee),

4    who will represent the interests of all of the estate creditors, not just Standard.  That fiduciary, not

5    Standard, should weigh in and decide where and how to bring the claims that are the subject of these

6    actions.  These claims are, simply put, property of the estate and should be addressed as such.

7    Failing that, basic bankruptcy principles – including the ending of the proverbial race to the

8    courthouse, the administration of the estate for all creditors, and the "fresh start" – will be violated.

9    Moreover, there is a material risk of duplication were the estate to elect to bring actions covering

10    the same claims.

11    **II.**    **BACKGROUND**

12        The Debtor has been involved in litigation with Standard for more than eight years.  *See*

13    Declaration of Dov Charney ("Charney Decl."), at ¶ 4.  The dispute began when an agreement

14    between the Debtor and Standard to acquire control of American Apparel resulted in Standard's

15    acquiring control of American Apparel and then cutting the Debtor out.  *Id.* at ¶¶ 5-6.  Not only was

16    the Debtor cut out of the transaction, but Standard sued him for about $20 million based on the terms

17    of the Debtor's arrangement with Standard.  *Id.* at ¶ 5.  It is important to note that the suit was not

18    for the return of any money that had been paid or loaned to the Debtor.  *Id.* at ¶ 6.  The Debtor

19    received no funds from Standard.  Then, the Debtor's having lost his source of income from

20    American Apparel and having expended his then assets (and ability to borrow against same) to pay

21    for counsel and living expenses, he was left financially destitute.  *Id.* at ¶ 6.

22        As a result, the Debtor was in pro per for most of the litigation and was represented at the

23    final hearing on the matter by an attorney who came in at the last minute and was paid a small fee

24    for limited services.  *Id.* at ¶ 7.  As might be expected, the Debtor lost, and the Court awarded

25    Standard a judgment in the amount of approximately $20 million (the "Judgment").  *Id.* at ¶ 8.  The

26    foregoing is important not as a challenge to the Judgment, which is final, but to dispel the aspersions

27    cast by Standard, a Wall Street hedge fund with almost unlimited resources, that the Debtor is a bad

28

1    actor.[1]

2       Since that time, Standard has embarked on what can only be called a scorched-earth policy

3    in its attempts to enforce the Judgment. Standard attempts in its Motion for Remand to sling mud

4    and to paint the Debtor as someone who flaunts the law and court orders.  The true circumstances

5    are better described as a huge New York hedge fund with plenty of capital and big firm legal

6    representation attempting to use its economic leverage and legal representation to ruin the Debtor's

7    attempts to rehabilitate himself financially and to rebuild his reputation in the business community

8    in which he finds himself.   The legal confrontation can truly be described as David versus Goliath.

9       This background is important even though Standard has won the battle with the Debtor and

10   obtained a judgment that is final. The most-pressing salient fact is that Standard has now turned its

11   attention to LAA, a company that employs the Debtor as its CEO and is the principal source of his

12   income. Having successfully obtained control of American Apparel (although it's mismanagement

13   ultimately resulted in the chapter 11 of American Apparel after it no longer had the benefit of the

14   Debtor's skill at operating the company), Standard now claims that LAA, the primary source of the

15   Debtor's income, is an alter ego and should be made a third party judgment debtor jointly liable on

16   the Judgment.

17      In deciding whether to remand the litigation that has been removed by the Debtor to his

18   chapter 11 case, whether LAA is the alter ego of the Debtor is not the relevant inquiry.  The only

19   relevant inquiry is the proper forum in which that decision should be made and who should be the

20   party analyzing and pursuing that claim.  Given the fact that Standard is attempting in each of the

21   removed lawsuits to enforce its judgments to the detriment of the Debtor's other creditors, this Court

22   should deny the motions to remand and exercise its jurisdiction over the litigation to assure that the

23   litigation is handled in a manner that is in the best interests of all or the creditors of the Debtor's

24

25       [1] Pursuant to its most recent form ADV filing with the SEC, Standard General L.P.
     reported discretionary assets under management and total number of accounts in the amount of
26   $1,554,842,000.  *See* ADV, Item 5, located at
     https://reports.adviserinfo.sec.gov/reports/ADV/151831/PDF/151831.pdf.
27

28

DEBTOR'S OPPOSITION TO JUDGMENT CREDITORS' MOTION TO REMAND TO SUPERIOR COURT

estate and consistent with basic bankruptcy principles.

Standard's approach is further evidenced by its filing on April 5, 2022 of a Motion for Relief from Stay for an order permitting Standard to "proceed to final resolution" of each of the removed actions. Dkt. No. 61. Shortly after filing the Motion, on April 5, 2022, Standard's counsel, Tony Bisconti, emailed Debtor's counsel, Bill Lobel, asking that the Debtor agree to advance the Motion so that it could be heard on shortened notice on April 21st.

Standard's aggressive and relentless pursuit of these claims against the Debtor runs contrary to one of the critical goals of Section 362 of the Bankruptcy Code to provide the Debtor a "breathing spell" from its creditors, as noted by the oft-quoted legislative history of Section 362 as follows:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

*In re Abrams,* 127 B.R. 239, 241 (B.A.P. 9th Cir. 1991), *citing* H.R.REP. No. 95–595, 95th Cong., 1st Sess. 340–41 (1977), reprinted in 1978 U.S. CODE CONG. & ADMIN.NEWS 5963, 6296.

Standard clearly has no intention of giving the Debtor his required "breathing spell."

## III.   ARGUMENT

### A.    The Alter-Ego Claims Are Property Of The Estate And This Court Should Defer Ruling Of Remand Motions Pending The Appointment Of A Committee And The Involvement Of The Committee's Counsel

Standard has alleged that LAA is the alter-ego of Charney and, therefore, the assets of LAA should be used to satisfy Charney's debts owed to Standard. *See* Motion to Remand. In an effort to guaranty that only Standard benefits from the Alter-Ego Claim, Standard argues that the Alter-Ego Claim is not property of Charney's estate but belongs solely to Standard. Nonsense. The basis for Standard's claim is entirely that it has a judgment against the Debtor, and, if LAA is the Debtor's alter ego, that it is also entitled to LAA's assets to satisfy its judgment. Thus, LAA is either an asset of the Debtor in which case it belongs before this Court *or* it is not. There is no basis for it to be an asset of the Debtor somehow only for Standard. Consequently, Standard's argument that the Alter-

1  Ego Claim is not property of Charney's estate is wrong and without any merit.  This Court should

2  not countenance Standard's efforts to hijack property belonging to the estate for its own purpose

3  and benefit to the detriment of the other creditors of the estate.  Instead, if LAA were in fact the

4  alter-ego of Charney as alleged by Standard, then LAA's assets would be part of Charney's estate

5  to be liquidated for the benefit of all of Charney's creditors by an estate fiduciary, not by Standard,

6  a self-interested actor.[2]

7          **1.**    **As Numerous California Bankruptcy Courts Have Held, The Alter-Ego**

8                  **Claims Are Property Of The Estate Under Section 541**

9        Section 541 of the Bankruptcy Code defines property of the bankruptcy estate as "all legal

10  or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §

11  541. The provision is construed broadly and includes causes of action. *United States v. Whiting*

12  *Pools, Inc.,* 462 U.S. 198, 205 n. 9 (1983).  Bankruptcy Courts in California have routinely held that

13  property owned by a corporation may be considered a debtor's property where the corporation is

14  the debtor's alter ego.  *Stout v. Marshack (In re Stout)*, 649 F. App'x 621, 623 (9th Cir. 2016)

15  ("[P]roperty owned by a corporation may be considered a debtor's property where the corporation

16  was the debtor's alter ego."); *In re Singh*, No. 6:14-BK-19919-SC, 2019 WL 1231146, at *6 (B.A.P.

17  9th Cir. Mar. 14, 2019) (accord); *Miller Ave. Acquisition Partners v. Brady (In re Enter. Acquisition*

18  *Partners, Inc.),* 319 B.R. 626, 634 (9th Cir. BAP 2004) (accord).

19        In *Kendall v. Turner (In re Turner),* 335 B.R. 140, 147 (Bankr.N.D.Cal.2005), for example,

20  pursuant to Rule 6009 of the Federal Rules of Bankruptcy Procedure (which permits the trustee to

21  prosecute actions on behalf of the estate), the trustee took over prosecution of judgment creditors'

22  fraudulent transfer claims alleging that a limited liability company was the alter ego of the debtor.

23  The court in *Turner* held that because the debtor and the defendant corporation were alter-egos,

24  property of the corporation was property of the debtor and could be recovered by the trustee on

25  behalf of the estate.

26   

27      [2] It is worth noting that, while citing to no exigency, Standard seeks this Court's blessing to
prosecute these actions for its benefit (financially and in pursuit of causing further distress to the

28  Debtor) in its preferred forum before the appointment of a creditors' committee.

THEODORA ORINGHER
COUNSELORS AT LAW

1    Intrinsic in the trustee's right and ability in *Turner* to take over the judgment creditors

2   fraudulent transfer and alter-ego claims pursuant to Rule 6009, is the underlying recognition (and

3   prerequisite) that such claims belong to the estate and not to individual judgment creditors (such as

4   Standard here).   Indeed, numerous bankruptcy courts have expressly held that similar alter-ego

5   claims were property of the estate.  *In re O'Reilly & Collins*, No. BR 12-33016 DM, 2014 WL

6   460767, *6 (N.D.Cal. 2014) (holding that alter ego claims based on a series of alleged fraudulent

7   transfers were property of the estate and stayed by the automatic stay); *In re Howrey, LLP*, No. C

8   13-00981 SBA, 2014 WL 3899309 (N.D.Cal. 2014) (alter ego claims against partners of law firm

9   based on diversion of funds and assets from the law firm to the partners were property of the estate

10   and stayed by the automatic stay); *In re Capriati Construction Corporation, Inc.*, No. BAP NV-17-

11   1200-BHTA, 2018 WL 1404439 (BAP 9th Cir. 2018) (Not for Publication) (although stay did not

12   apply to non-debtors, it applied to property of the estate, including an alter ego claim based on

13   fraudulent transfer.)[3]

14    Moreover, bankruptcy courts in the Ninth Circuit have routinely held that alter-ego claims

15   alleging a generalized injury to the debtor corporation and all of its creditors are property of the

16   bankruptcy estate under § 541, and may be asserted only by the bankruptcy trustee.  See *In re

17   Advanced Packaging & Prod. Co.,* 426 B.R. 806, 819 (C.D. Cal. 2010); *In re Davey Roofing*,

18   167 B.R. 604, 605 (Bankr. C.D. Cal. 1994) ("[I]n the context of bankruptcy, only the Debtor or

19   Trustee has standing to assert the alter ego claim where injury to the corporation is alleged. Debtor's

20   exclusivity to assert the claim follows from the conclusion that alter ego claims are property of the

21   bankrupt estate.  Each creditor has a claim on the property of the estate, subject to the priorities of

22   the Bankruptcy Code, but property of the estate does not belong to any creditor individually"); *CBS,

23   Inc. v. Folks* (*In re Folks*), 211 B.R. 378, 386 (B.A.P. 9th Cir. 1997) ("The 'trustee has the right to

24   bring any action in which the debtor has an interest' because this is property of the estate, the trustee

25   is acting to benefit the debtor's estate, and is ultimately benefitting the estate's creditors upon

26   distribution.").

27

28    [3] A copy of this Opinion is attached hereto as **Exhibit A**.

DEBTOR'S OPPOSITION TO JUDGMENT CREDITORS' MOTION TO REMAND TO SUPERIOR COURT

1    Notably, given the status of LAA as the Debtor's employer, the Debtor (and its counsel) do

2    not seek here to prosecute the subject claims themselves.  Instead, the causes of action asserted in

3    the removed Actions should be pursued by the creditor's committee or another fiduciary (if there is

4    no committee) for the benefit of the estate.

5    "To determine whether the action is personalized to an individual creditor or accrues

6    generally to [the bankruptcy estate], the court must look to the alter ego claim and the injury for

7    which relief is sought." *CBS, Inc.,* 211 B.R. at 386.  A particularized, i.e., personal, claim exists

8    where "the claimant himself is harmed and no other claimant or creditor has an interest in the

9    cause." *In re Advanced Packaging & Prod. Co.,* 426 B.R. 806, 819 (C.D. Cal. 2010).  A general

10   claim, by contrast, exists where "the liability is to all creditors of the corporation without regard to

11   the personal dealings between such officers and such creditors." *Id.*  "If a claim is a general one,

12   with no particularized injury arising from it, and if that claim could be brought by any creditor of

13   the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the

14   outcome of the trustee's action." *Id.* (quoting *Kalb, Voorhis & Co. v. American Financial Corp.,* 8

15   F.3d 130, 132 (2d Cir.1993)).

16   While the Debtor here is an individual—and not a corporation—these cases distinguishing

17   a "general injury" from "particularized injury" are instructive on the true nature of the alter-ego

18   claims asserted by Standard and provide further authority for holding that such claims belong to the

19   estate.  There is nothing about any of the removed Actions that supports a finding that the remedy

20   sought in those Actions is particularized to Standard and, in fact, Standard essentially admits that

21   the contrary is true.

22   Specifically, in its Motion to Amend Judgment to add LAA as Charney's alter-ego, Standard

23   alleges that LAA's assets are treated as the assets of Charney: "Charney treats LAA's assets as his

24   own."  Motion to Amend, at 7.  It also alleges that LAA has diverted Charney's assets (or, in other

25   words, it alleges that LAA has caused the fraudulent transfer of Charney's assets), stating, "LAA

26   actively participates in the diversion of Charney's assets…"  *Id.* Standard further alleges that

27   Charney is "stashing his assets and income in LAA." *Id.* at 13.  Based on these and other allegations,

28   Standard seeks to add LAA as a judgment debtor, holding it jointly and severally liable for

1    Charney's debts.  To the extent these allegations made by Standard in its Motion to Amend are true,

2    that the assets of LAA are to be treated as the assets of Charney, that Charney is stashing his personal

3    assets with LAA and that LAA has diverted or fraudulently transferred assets belonging to Charney,

4    such claims are patently property of the Estate as being based on fraudulent transfers (*see e.g., In re*

5    *O'Reilly & Collins*; *In re Howrey, LLP* and *In re Capriati Construction Corporation, Inc.*) and are

6    generalized claims as opposed to claims particular to Standard (*see e.g., In re Advanced Packaging*

7    *& Prod. Co.*, *In re Davey Roofing*, and *In re Folks*).

8              **2.      The Cases Relied On By Standard Are Distinguishable And Do Not**

9                       **Support Remand**

10            Standard ignores each of the on-point cases cited above, and instead attempts to rely on

11   distinguishable cases in support of its remand request.  As demonstrated below, each of these cases

12   is distinguishable and does not justify the remand sought.

13            Debtor cites to *In re Cytodyn of New Mexico, Inc.* which is a case that involved alter-ego

14   claims and was remanded.  *See* Motion to Remand at 15 citing *In re Cytodyn of New Mexico, Inc.*,

15   374 B.R. 733, 738 (Bankr. C.D. Cal. 2007).  Preliminarily, the case involves very little discussion

16   of the alter-ego claims, mentioning them in passing by stating only that the "[party objecting to the

17   remand] argues that alter ego claims such as those that [plaintiff] asserts belong exclusively to the

18   debtor in possession to assert.  However such an argument seems irrelevant to this particular dispute,

19   since here, [plaintiff's] alter ego claims are being asserted against the Debtor, not on the Debtor's

20   behalf." *Id.* at 744.  Thus, although it is true that *Cytodyn of New Mexico* involved alter ego claims

21   and was remanded, the alter ego claims were very different from those involved in this case and the

22   court found that they were irrelevant as a result.  This case is inapposite because here the alter ego

23   claims are being asserted <u>against</u> a non-debtor, LAA, effectively on behalf of the Debtor in an effort

24   to bring assets from the non-debtor into the debtor's estate.  Thus, the alter-ego claims here serve to

25   increase the available property of the estate for distributions to all creditors.

26            The Debtor cites to three additional cases for the proposition that alter-ego claims are not

27   property of the estate: Motion to Remand, at 20, citing *Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1253

28   (9th Cir. 2010) ("*Ahcom*"), *Kayne v. Ho,* No. LACV0906816JAKCWX, 2013 WL 12120081, at *4-

*5 (C.D. Cal. Nov. 4, 2013) ("*Kayne*") and *Shaoxing County Huayue Import & Export v. Bhaumik,* 191 Cal. App. 4th 1189, 1193 (Ct. App. 2011) ("*Shaoxing County*").    Each of these cases is inapposite.

The Court in *Ahcom* held that a creditor's alter ego claims against the bankrupt's shareholders could be pursued by the creditor.  The Court reached that conclusion after finding that California law does not recognize a freestanding general alter ego claim that requires shareholders to be liable for all of a company's debt or that allows a corporation and its shareholders to be treated as alter egos for purposes of all of the corporation's debts.  *Id.* at 1252.  The Court recognized, however, that the California state court in *Stodd v. Goldberger*, 73 Cal. App. 827, 141 Cal. Rptr. 67 (1977) ("*Stodd*") expressly held that a bankruptcy trustee can sue for certain alter-ego claims, including the following: "an action by a trustee in bankruptcy to recover assets of the bankrupt by setting aside fraudulent and preferential transfers "; "an action by creditors and a trustee in bankruptcy for conversion by a corporate stockholder of assets of the bankrupt corporation "; "an action by the trustee of a bankrupt corporation against the sole shareholders on an alter ego theory upon allegations that ... defendants deposited corporation funds into their personal bank accounts or that corporation funds were received by the defendants personally."  *Id.* quoting *Stodd* at 71.  In other words, claims involving a generalized harm, and claims that cause to bring assets into the debtor's estate by way of avoidance, turnover, or otherwise.  Unlike the alter-ego claim in *Ahcom*, the alter-ego claim at issue in this case does not involve attempting to hold an individual shareholder liable for all of a company's debt as the company's alter-ego.  Instead, the alter-ego claim is attempting to permit Debtor's creditors to reach (and, therefore, bring into Debtor's estate) assets belonging to a separate company, of which the Debtor is not a shareholder.  The Alter-Ego Claim at issue here, is akin to those that the *Ahcom* and *Stodd* Courts found were properly pursued by a bankruptcy trustee on behalf of all of the creditors of the estate.

As noted above, subsequent California state, bankruptcy, and bankruptcy appellate panel case after *Ahcom*, have identified numerous alter-ego claims for which a bankruptcy trustee has authority to pursue, with one such court stating that "[t]he trustee of a bankrupt corporation can maintain an action against a defendant based on an alter ego theory if there is some allegation of

1   injury to the corporation that gives the corporation a right of action against the defendant." *In re*

2   *O'Reilly & Collins*, 2014 WL 460767, *6 (holding that alter ego claims based on a series of alleged

3   fraudulent transfers were property of the estate and stayed by the automatic stay); *In re Howrey,*

4   *LLP,* 2014 WL 3899309 (N.D.Cal. 2014) (alter ego claims against partners of law firm based on

5   diversion of funds and assets from law firm to partners was property of the estate and stayed by the

6   automatic stay); *In re Capriati Construction Corporation, Inc.,* 2018 WL 1404439 (BAP 9th Cir.

7   2018 Not for Publication) (although stay did not apply to non-debtor, it applied to property of the

8   estate, including an alter ego claim based on fraudulent transfer.)  Unlike the alter-ego claim found

9   to not be a general claim in *Ahcom* because it sought to hold a shareholder liable for corporate debts,

10  the Alter-Ego Claim here centers around the Debtor allegedly hiding his own assets in LAA,

11  allegedly treating LAA's assets as his own, and LAA's alleged diversion and fraudulent transfer of

12  Charney's assets.

13        The Court in *Kayne* held that judgment creditors had standing to assert a claim seeking to

14  impose alter ego liability.  Although there were allegations of assets being stripped and fraudulently

15  conveyed away, the Court found that the alleged transfers were not the basis of the Plaintiff's alter

16  ego claim, but simply evidence that defendants were alter egos. *Id*. at *6.  The Court found instead

17  that the three primary theories in support of the alter ego claims were (i) that defendant controlled

18  Grande and managed it without regard to separate legal identity, (ii) use of the other defendants as

19  instrumentalities to exercise alter ego control over Grande, and (iii) Defendants manipulated assets

20  among various entities, causing Grande to lack available assets to satisfy the judgment. *Id*.  Similar

21  to *Ahcom, Kayne* involved alter-ego claims against individual shareholders, attempting to hold them

22  liable for debts owed by the corporation.  Here, however, the Alter-Ego Claim is primarily premised

23  on the alleged diversion and fraudulent transfer of Charney's assets through and by LAA.  This

24  Alter-Ego Claim asserts Debtor has hidden his assets in LAA and that LAA has participated

25  fraudulently transferring Debtor's assets be outside of the reach of his creditors.  *Kayne* is therefore

26  distinguishable from this case for the same reason that *Ahcom* is distinguishable: this case involves

27  a different type of alter-ego claim than those involved in *Ahcom* and *Kayne* and is instead more like

28  the claims held by *Stodd* to be properly pursued by a bankruptcy trustee.  *Stodd* at 71

In *Shaoxing County,* the Court held that the creditor's action to hold the individual liable as an alter ego for a creditor's substantive causes of action against a bankrupt corporation was not the property of the bankruptcy estate.  Importantly, the Court further premised its ruling on its finding that "California law does not recognize a general alter ego claim by which a defendant may be held personally liable for a bankrupt corporation's debts in the absence of allegations giving the corporation a right of action against the defendant."  *Shaoxing County,* 191 Cal. App. 4th at 1199. Further noting, "[f]or example, the trustee of a bankrupt corporation can maintain an action against corporate shareholders on an alter ego theory in order to recover property or pursue a right of action belonging to the bankrupt corporation, including an action to set aside fraudulent transfers or an action for conversion to recover assets of the bankrupt corporation…" *Id.* at *310.  The Court found that the case before it did not involve allegations of fraudulent transfers or action to recover assets of the bankrupt entity (*Id.* at *311), instead, the allegations against [Defendant] did not adhere to the requirements necessary to maintain the separate corporate existence.  There was also an allegation that the defendant caused the Debtor to liquidate and distribute its assets to avoid judgment and render it insolvent.

Based on these allegations, the Court found that the alter ego claim was not property of the estate subject to the automatic stay.  Unlike the alter-ego claims in *Shaoxing County,* this case does not involve claims attempting to hold an individual defendant personally liable for a bankrupt corporation's debts.  It also does not involve any allegations that the Debtor caused LAA to liquidate and distribute assets to avoid judgment and become insolvent.  To the contrary, the Alter-Ego Claim seeks to hold a non-party, corporation (LAA) that is actively conducting business liable for the debts of an individual, non-shareholder (the Debtor).  Moreover, the alter-ego claims at issue in *Shaoxing County* are demonstrably different from the alter-ego claims at issue in this case, which squarely involve allegations of LAA hiding, diverting and fraudulently transferring Charney's assets—assets that now belong to the Debtor's estate if the Alter-Ego Claim is proven true.

### 3.    The Court Should Defer Determining The Remand Motions To Permit The Committee Of Unsecured Creditors To Be Heard

Because the Alter-Ego Claim is property of the Estate, this Court should defer its

1    consideration of the Remand Motion until the United States Trustee appoints a committee of

2    unsecured creditors (the "Committee") and the Committee selects counsel to represent it.  *See Landis*

3    *v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (noting "the power inherent in every court to control the

4    disposition of the causes on its docket with economy of time and effort for itself, for counsel, and

5    for litigants…").  The Committee may want to exercise control over litigation related to the Alter-

6    Ego Claim and prosecute or settle the claim for the benefit of the estate.  At the very least, the

7    Committee should get the opportunity to weigh in on this issue and on the issue of remand before

8    any decision to remand is made.   And clearly there is no exigency to prevent this from happening.

9        The necessity of Committee involvement is readily apparent once one considers the

10   scorched-earth approach and goals of Standard.  Standard is not focused on maximizing recovery

11   for the estate's creditors, but is instead focused on destroying Charney's reputation and all of his

12   avenues and prospects for success and income building.  Standard would be happy to see LAA

13   pillared, liquidated and left in rubble, if for no other reason than the satisfaction it will receive

14   knowing that Charney will take a reputational hit as a result.  Such goals are anticipated to be

15   contrary to those of the Committee to be appointed in this case, which will presumably be focused

16   on maximizing the recovery for the estate, without any hidden motivation of destroying Charney at

17   all costs.  The need for an independent party (the Committee) to take over the Alter-Ego Claim to

18   assess its value and extract from it a recovery beneficial to the estate and its creditors is appropriate

19   given the goals of the Bankruptcy Code and is critical here to further the Debtor's ultimate

20   reorganizational efforts.

21       **B.**    **Removal Was Proper Under 28 U.S.C. §§ 1334 And 1452(a) Because The**

22           **Actions Are Patently "Related To" Charney's Bankruptcy Case**

23       Should this Court decline to defer a decision on the Remand Motion, then the Court should

24   deny the Remand Motion on the merits because this action is "related to" the Debtor's

25   bankruptcy proceedings and removal was timely.

26       Under 28 U.S.C. § 1452(a), "[a] party may remove any claim or cause of action in a civil

27   action . . . to the district court for the district where such civil action is pending, if such district court

28   has jurisdiction of such claim or cause of action under section 1334."  Under 28 U.S.C. § 1334, in

1  turn, federal "district courts shall have original but not exclusive jurisdiction of all civil proceedings

2  arising under title 11 [*i.e.*, the U.S. Bankruptcy Code], or arising in or *related to* cases under title

3  11." *Id*. (emphasis added).    The Ninth Circuit has adopted an expansive definition of

4  bankruptcy "related to" jurisdiction under Sections 1334 and 1452: "whether *the outcome of the*

5  *proceeding could conceivably have any effect on the estate being administered in bankruptcy* ." *In*

6  *re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988) (emphasis added).    In other words, "[a]n action is related

7  to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action

8  (either positively or negatively) and which in any way impacts upon the handling and administration

9  of the bankrupt estate."  *Id*.; *see also* In re Mortgages Ltd., 399 B.R. 673, 676 (Bankr. D. Ariz. 2008)

10  (same).

11      This action, whatever its outcome, will significantly impact Charney's estate and is therefore

12  "related to" Charney's bankruptcy. *See also,* Section D.(6), *infra*.  Therefore, under the *Pacor* test,

13  this Court has jurisdiction over this matter.

14      **C.      The Notices Of Removal Were Timely**

15      Standard also bizarrely argues that Charney's Notices of Removal were untimely under Rule

16  9027 of the Federal Rules of Bankruptcy Procedure despite admitting that each of the Notices of

17  Removal was filed within seven (7) days of Charney's bankruptcy petition.  Standard's argument

18  misstates the deadlines provided in Rule 9027, erroneously arguing that Rule 9027 required Charney

19  to wait a certain amount of time before filing his Notices of Removal.  See Motion, at 17 ("Here,

20  however, Charney immediately filed notice of removal at the same time he filed for bankruptcy (or,

21  in the case of the First Enforcement and FTA, soon thereafter)").[4]

22      Rule 9027 governs the procedure for actions, like the ones involved here, to be

23  removed under 28 U.S.C. § 1452(a).  *See In re Perry*, No. ADV. SV-10-01356-GM, 2011 WL

24  4503166, at *6 (B.A.P. 9th Cir. July 8, 2011) ("Rule 9027 governs the procedure for removal under

25

26      _____

      [4] Standard also erroneously argues that Charney was required to "attach 'a copy of all process and
27  pleadings'" to his Notices of Removal, ignoring completely that Local Rule 9027-1(d) expressly permits the
   removing party to file such documents either "30 days after the date of filing of the notice of removal," or "if
27  a motion to remand is filed prior to expiration of such 30-day period, 14 days after entry of an order denying
   such motion to remand."  *See* LR 9027-1(d).

28

§ 1452(a)").[24] Rule 9027(a) provides that, where, as here, a civil action was initiated prior to the bankruptcy action, a notice of removal may be filed "within . . . 90 days after the order for relief in the case under the [Bankruptcy] Code." The voluntary filing of a bankruptcy petition constitutes an "order for relief" under the Bankruptcy Code. 11 U.S.C. § 301 ("A voluntary case under [the Bankruptcy Code] is commenced by the filing . . . of a petition under [the Bankruptcy Code] . . . The commencement of a voluntary case . . . constitutes an order for relief under such chapter").

Here, Charney filed for bankruptcy on March 10, 2022. He filed the notice of removal of the Domesticated Judgment Action on March 10, 2022, and the other two notices on March 17, 2022. Clearly, each of the Notices of Removal were timely under Rule 9027. Rule 9027 did not, as Standard argues, require that Charney wait to file his Notices of Removal.

**D.     This Court Should Exercise Jurisdiction On Equitable Grounds.**

Equitable considerations also support the exercise of federal jurisdiction over the Actions and the underlying claims. Ninth Circuit courts consider fourteen non-exclusive factors in determining whether to remand on equitable grounds. *See In re Cedar Funding, Inc.*, 419 B.R. 807, 820 & n.18 (B.A.P. 9th Cir. 2009) (listing "up to fourteen factors"). The more significant of these factors include "the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand]," the "degree of relatedness or remoteness of [the] proceeding to [the] main bankruptcy case," whether the applicable law is "difficult or unsettled," and the "possibility of prejudice to other [non-removing] parties in the action." Ultimately, which factors predominate varies depending upon the facts and circumstances of a particular case. *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.,* 447 B.R. 302, 312 (C.D. Cal. 2010) (denying remand motion where "the most important factors . . . weigh against remand"). These factors weigh heavily against remand, and in favor of the continued exercise of jurisdiction by this Court over the subject matter of the Actions.

While Debtor is responding to Standard's arguments as to these factors, in the case at bar the fact that the removed Actions should be pursued for the benefit of all of the creditors of the Debtor's estate by a representative of the estate, like the creditor's committee or other independent fiduciary of the estate, should end the inquiry as to remand. Moreover, each of these actions need

to be properly coordinated by one court (this Court) to maximize efficiency, and reduce litigation costs for the estate. Having this Court handle coordination of each of the actions will also ensure that they are progressing in a manner that considers the impact that resolution of the actions will have on the whole creditors body.

Nonetheless, the Debtor responds to Standard's arguments as to the enumerated factors as follows:

>    **1.    The effect or lack thereof on the efficient administration of the estate if the court recommends remand.**

The most important factor for bankruptcy court to consider when deciding whether to exercise its discretion to equitably remand a removed proceeding is the effect of remand on efficient administration of bankruptcy estate. *In re Adelphia Communications Corp.,* 285 B.R. 127, 40 Bankr. Ct. Dec. (CRR) 112 (Bankr. S.D. N.Y. 2002). Here, this factor weighs heavily in favor of this Court retaining jurisdiction because the claims should be pursued by a fiduciary of the estate and remain under this Court's purview and oversight given the impact that resolution of the claim will have on the creditor body's recovery and the Debtor's reorganization efforts.

Remand of the Actions back to the state court would negatively impact the administration of the Bankruptcy Case because the estate would be forced to endure litigation costs in state court while simultaneously incurring such costs in connection with adjudication and administration of Standard's anticipated proofs of claim to be filed against Charney. Moreover, because a plan of reorganization can only be confirmed when it provides for full payment of both administrative and priority claims under Section 1129 of the Bankruptcy Code, confirmation of a plan may be jeopardized if payment of the administrative claims and priority claims cannot be ensured because estate funds are instead committed to defending the Actions in state court. In addition, the claims should be prosecuted by the Committee who may ask for guidance from this Court in how it should proceed and to obtain the requisite standing to proceed, and who may bring their own claims on the same causes of action resulting in duplication.

Any collection efforts conducted by Standard in the Actions that are not stayed by Section 362 of the Bankruptcy Code and/or for which Standard gets relief from stay, such as pursuing

1250627.12/81961.82002

DEBTOR'S OPPOSITION TO JUDGMENT CREDITORS' MOTION TO REMAND TO SUPERIOR COURT

1  fraudulent transfers or alter-ego claims, are also very likely to be similar if not identical to efforts

2  of the Committee , resulting in duplicative claims being pursued in perhaps different forums.  The

3  Debtor's estate should not incur duplicative costs related to the Debtor's defense of collection

4  efforts.

5      Moreover, the outcomes of the Alter-Ego Claim and the Fraudulent Transfer Action will

6  impact the assets available for distribution in this case and any settlement will have to come to this

7  Court for approval.  Therefore, Standard's Actions, claims of fraudulent transfer and alter-ego, and

8  other claims related to collection on the debt allegedly owed to it, are inextricably intertwined with

9  the Debtor's financial affairs and administration of the Debtor's estate.  It is further worth noting

10 that unlike the Bankruptcy Court, the state court would rule on the Alter-Ego Claim with no

11 consideration to Debtor's whole creditor class or on how resolution of the claim will affect

12 administration of Debtor's estate or Debtor reorganizational prospects.  Instead, the Superior Court

13 would be focused only on the creditor before it: Standard.

14     This factor weighs heavily in favor of this Court retaining jurisdiction over the Actions.

15         **2.    Extent to which state law issues predominate over bankruptcy issues.**

16     To be sure, the Actions were initiated prior to the Bankruptcy Case, and arose under state

17 law. What changed after the bankruptcy filing is that the controlling issue now is whether the Alter-

18 Ego Claim is property of Charney's bankruptcy estate.  This new aspect of the dispute is unique to

19 the bankruptcy process.  As noted above, the Committee also has an interest in arguing that such

20 claims belong to the estate and should be afforded the opportunity to weigh-in on the issue.

21     Moreover, it is very likely that Standard will be filing proofs of claim against Charney related

22 to the claims at issue in the Actions.  This Court is more than capable of determining the state law

23 involved in the actions (blackletter alter ego law) in conjunction with the claims administration

24 process. *Senorx, Inc. v. Coudert Brothers, LLP*, No. C-07-1075 SC, 2007 WL 1520966, at * 3 (N.D.

25 Cal. May 24, 2007) ("[d]espite the presence of state law claims and the need to interpret a state

26 statute, bankruptcy courts are capable of resolving issues of state law").

27         **3.    Difficult or unsettled nature of applicable law.**

28     Here, Standard's collection claims, Fraudulent Transfer Claim and Alter-Ego Claim, while

based on state law, are not unusual or complex or unsettled.  *See also In re Wash. Mut., Inc. Sec. Litig.*, No. C09-816 MJP, 2009 WL 3711614, at *3 (W.D. Wash. Nov. 2, 2009) ("while Plaintiffs' claims are based on state law [including California state law claims of fraud, negligent misrepresentation, breach of fiduciary duty, and violations of California Corporations Code § 25400 *et seq.*], they are not unusual or complex.)

Thus, this factor weighs heavily in favor of this Court retaining jurisdiction over the Actions. *In re Cytodyn of N. M.*, 374 B.R. 733, 739 (Bankr. C.D. Cal. 2007) (factor weighing against remand because the case did not involve difficult or unsettled issues of state law); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 447 B.R. 302, 312 (C.D. Cal. 2010) (denying remand where "there are no unsettled or difficult issues of state law").  Indeed, this Court has substantial experience adjudicating similar state law claims to those at issue here.

### 4. Presence of related proceeding commenced in state court or other non-bankruptcy proceeding.

Charney has removed each of the Actions and there are no other related proceedings in state court pending.  *Security Farms v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers,* 124 F.3d 999, 1010 (9th Cir. 1997) (Noting that when a case has been removed, the state court proceeding is extinguished, and [n]o other related state proceeding exists).

Thus, there is no risk of inconsistency in the rulings should this Court deny the Motions to Remand.  The opposite risk is present, however, as set forth above, if the Motion is granted.

### 5. Jurisdictional basis, if any, other than 28 U.S.C. § 1334.

It is undisputed that this Court has jurisdiction over the case pursuant to 28 U.S.C. § 1334. There is no other jurisdictional basis.

### 6. Degree of relatedness or remoteness of proceeding to main bankruptcy case.

The Actions are highly related to the main bankruptcy case given that they involve claims for substantial assets of LAA that would materially improve the prospect of recovery for creditors in this Bankruptcy Case, involve core claims of fraudulent transfer and alter-ego that are property of the Estate that will directly impact the estate's administration and the ability of the Debtor to

1   reorganize.  In addition, even if the Court remanded the Actions and allowed them to be prosecuted

2   solely for the benefit of Standard, it is highly likely that the Committee would initiate an action on

3   behalf of the estate for the very same claims.

4          **7.**      **The substance rather than the form of an asserted 'core' proceeding.**

5        The Alter-Ego Claim is a core proceeding because as an asset of the estate, it is a matter

6   concerning administration of the estate.  *See* 28 U.S.C. § 157(b)(2)(A).  The Fraudulent Transfer

7   Action is a core proceeding as well under Section 157(b)(2)(H).  *See* 28 U.S.C. § 157(b)(2)(H) (Core

8   proceedings include "proceedings to determine, avoid, or recover fraudulent conveyances").   The

9   "core" nature of these claims is not purely due to form, as adjudication of them and treatment of

10  them in the bankruptcy case will have a significant impact on the administration of the bankruptcy

11  case and the claims administration process.  Each of these actions need to be properly coordinated

12  by one court (this Bankruptcy Court) to maximize efficiency, and reduce litigation costs for the

13  estate.  Having this Court handle coordination of each of the actions will also ensure that they are

14  progressing in a manner that considers the impact that resolution of the actions will have on the

15  creditors at whole and on the Debtor's reorganization.

16         **8.**      **The feasibility of severing state law claims from core bankruptcy**

17                  **matters to allow judgments to be entered in state court with**

18                  **enforcement left to the bankruptcy court.**

19       The Fraudulent Transfer Action consists of only actual fraudulent transfer claims (each of

20  which is core) and a related cause of action for permanent injunction.  In the Domesticated Judgment

21  Action the Judgment has been entered against Debtor, and what remains is the Alter-Ego Claim,

22  which as discussed above, is core.  Therefore, there are no state court claims to sever in these actions.

23  This factor thus weighs in favor of this Court retaining jurisdiction or is otherwise neutral.

24         **9.**      **The burden on the Bankruptcy Court's docket.**

25       The Debtor understands the impact that the case will have on the appropriate court's docket,

26  and appreciates this Court's willingness to consider retaining the Actions. Although any court's

27  docket will be burdened by this additional litigation, which is a factor in every bankruptcy case, the

28  efficiencies to be gained in the resolution of the litigation in a single forum are considerable when

THEODORA ORINGHER
COUNSELORS AT LAW

1   giving due consideration to the rights of all of Debtor's creditors, not just Standard.  This is

2   particularly true given that claims at issue *must* also be resolved in the context of Debtors' chapter

3   11 proceedings.  The disputes are more appropriately adjudicated in the Debtors' bankruptcy cases,

4   before the Bankruptcy Court.  Moreover, the Committee will very likely bring the very same Alter-

5   Ego claim itself before this Court by way of an adversary proceeding if it finds that the claim has

6   merit, potentially causing litigation of duplicative alter-ego claims in two different forums.  If this

7   occurs, the burden on this Court will be the same even if it remands the Actions.

8       Moreover, the burden on this Court will be somewhat limited given that the Domesticated

9   Judgment Action and Defamation Action have both already resulted in a final state court judgment,

10  and all that remains for those cases are post-judgment collection efforts, issues which this Court has

11  significant experience handling through the claims administration process.  This factor is therefore

12  neutral or weighs in favor of retaining jurisdiction.

13          **10.    The likelihood that the commencement of the proceeding in bankruptcy**

14                  **court involves forum shopping by one of the parties.**

15      There is no indication that Charney's bankruptcy filing was part of a scheme to forum shop.

16  Instead, it was motivated by financial desperation in the face of mounting and relentless collection

17  efforts by Standard to collect on the more than $30 million in judgments it held against Charney

18  combined with the debts owed to others and the threat of ending the Debtor's employment.  Charney

19  was also facing foreclosure of his personal residence as a Notice of Default was recorded on or about

20  January 24, 2022.  Charney's removal of the Actions to the same court where he filed his bankruptcy

21  does not constitute forum shopping.

22          **11.    The existence of a right to a jury trial.**

23      Standard acknowledges that a jury trial is not relevant to the Domesticated Judgment and

24  Defamation Actions, but assert that jury trial rights are implicated in the Fraudulent Transfer Action.

25  The mere fact that LAA (as the Defendant in the Fraudulent Transfer Action) may have a jury trial

26  right in one of the Actions does not dictate remand.  Instead, this Court can handle the action until

27  the time of trial, at which time the district court may withdraw the reference from the

28  bankruptcy court and allow a jury trial.  S*ee e.g. In re Mid-Atlantic Res. Corp.*, 283 B.R. 176, 192

THEODORA ORINGHER
COUNSELORS AT LAW

1   (S.D. W. Va. 2002) ("If the parties do not consent to the bankruptcy court conducting the trial, the

2   trial will be held before [the district court]."). It is also not clear that LAA would even seek a jury

3   trial.

4               **12.       The presence in the proceeding of non-debtor parties.**

5       There are other non-debtor parties that Standard has brought into the Actions, including, for

6   example, LAA. The outcome of this non-debtor litigation may have a direct effect on the assets

7   available for distribution to the estate's creditors, either by increasing or decreasing the amount

8   available for distribution. This Court clearly has jurisdiction over these Actions and in light of the

9   non-debtor parties' support for the Actions being before this Court, this factor weighs heavily

10  against remand. *In re Mortgages Ltd.,* 399 B.R. 673, 677 (Bankr. D. Ariz. 2008)

11  ("[u]nder *Pacor,* federal jurisdiction exists pursuant to section 1334(b) when resolution of

12  nondebtor litigation may directly affect the estate's obligation to creditors whose claims are currently

13  before the bankruptcy court.")

14              **13.       Comity.**

15      California bankruptcy and district courts determine California state law claims as a matter

16  of course. The effect the case will have on Debtor's reorganization efforts can only be gauged by

17  the Bankruptcy Court. Comity dictates that the Bankruptcy Court resolve the case to the extent

18  possible, and any claims that the Bankruptcy Court is not able to try, be tried in the Central District,

19  where Debtors' Bankruptcy Case is pending.

20      Moreover, ordinarily the filing of a proof of claim to assert a claim against a debtor's estate,

21  even if predicated on state law, causes the bankruptcy objective of providing for the timely and

22  centralized adjudication of all claims and disputes in the bankruptcy court to override any

23  conflicting comity considerations based upon the state law nature of the claim asserted. Here, it is

24  highly anticipated that Standard will be filing proofs of claim in Charney's Bankruptcy Case.

25              **14.       The possibility of prejudice to other parties in the action.**

26      Standard will not suffer prejudice if these claims are resolved in the Bankruptcy Court. The

27  claims were originally filed in the state court located in Los Angeles County and Charney's

28  Bankruptcy Case is pending in the Bankruptcy Court for the Central District of California, also

1   sitting in Los Angeles County.  Instead, the Debtor and all other creditors in the Bankruptcy Case

2   will face prejudice in the event of remand because there is a risk of the reorganization efforts being

3   stalled while the parties await resolution of the state court proceedings.  Moreover, all other creditors

4   and the estate will be prejudiced to the extent that the Alter-Ego Claim is adjudicated without the

5   involvement of the Committee and for the benefit of Standard, whose goal would be to prosecute

6   the claim on behalf of the estate and all of the creditors, as opposed to Standard's intent to prosecute

7   it for its own benefit and to pursue the claim for its own illegitimate motives and purposes.

8           **E.    Charney's Bankruptcy Case Was Filed In Good Faith**

9           There is no evidence, whatsoever, that Charney filed his bankruptcy case with a bad faith

10  intent to hinder his creditors.  What's abundantly clear from a cursory review of Charney's

11  Schedules and of Standard's Motion to Remand, is the Charney has considerable debts (including

12  Standard's claims of over $30 million as well as other significant debts) and little to no

13  unencumbered assets.  Given Standard's scorched-earth approach and threats to his continued

14  employment coupled with debts owed to many parties, Charney had no choice but to seek

15  bankruptcy protection in hopes and with the goal of a successful reorganization and has the absolute

16  right to do so.  Removing the Actions was a necessary step in Charney's reorganization efforts,

17  ensuring that all of the Actions are pending before the same Judge and same Court, thus significantly

18  reducing costs to the estate and maximizing efficiencies.  Removing the Actions will also afford this

19  Court the flexibility to preside over the cases in a manner that is best suited for and in support of

20  Debtor's reorganization efforts and in a manner that is in the best interest of all of the estate's

21  creditors, and not just Standard.  Standard's allegations that Charney's conduct was in bad faith are

22  completely meritless.

23          **F.    The Rooker-Feldman Doctrine Is Inapplicable**

24          Standard's reliance on the Rooker-Feldman Doctrine in purported support of remand is a red

25  herring.  That doctrine has no "has no application to a properly removed case where ... there is no

26  attack on a separate and final state-court judgment[;]" consequently, a federal court could set aside

27  a state court default judgment following removal."  *In re Pacheco*, 616 B.R. 126, 133 (Bankr.

28  D.N.M. 2020).  In this Case, there is no judgment to be overturned.  The California state courts have

1  not issued any final ruling or judgment on the Alter-Ego Claim, nor have they entered judgment

2  with respect to the Fraudulent Transfer Claim, therefore, the Rooker-Feldman Doctrine is

3  inapplicable to those claims.

4  **IV.    <u>CONCLUSION</u>**

5        Wherefore, Charney respectfully requests that this Court deny Standard's Motion to

6  Remand, in its entirety.

7  DATED:  April 7, 2022                          THEODORA ORINGHER PC

8

9

10                                      By:        /s/ Christopher J. Harney
                                              _____
11                                            William N. Lobel
                                              Christopher J. Harney
12                                            Attorneys for Judgment Debtor Dov Charney

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "A"

2018 WL 1404439
Only the Westlaw citation is currently available.
**NOT FOR PUBLICATION**
United States Bankruptcy Appellate
Panel of the Ninth Circuit.

IN RE: CAPRIATI CONSTRUCTION

CORPORATION, INC., Debtor.

Capriati Construction

Corporation, Inc., Appellant,

v.

SPER, Inc., Appellee.

BAP No. NV–17–1200–BHTa
|
Bk. No. 2:15–BK–15722–ABL
|
Argued and Submitted on December 1, 2017
|
Filed—March 20, 2018

Appeal from the United States Bankruptcy Court for the District of Nevada, Honorable August B. Landis, Bankruptcy Judge, Presiding

**Attorneys and Law Firms**

Aj Kung argued for appellant Capriati Construction Corporation, Inc.

H. Stan Johnson of Cohen–Johnson, LLC argued for appellee SPER, Inc.

Before: BRAND, HOULE[1] and TAYLOR, Bankruptcy Judges.

**MEMORANDUM[2]**

*\*1* Reorganized debtor Capriati Construction Corp., Inc. appeals an order denying its motion for contempt against SPER, Inc., for SPER's alleged violations of the automatic stay and discharge and/or plan injunction. Capriati alleged that the fraudulent transfer and alter ego claims SPER was prosecuting in state court against the non-debtor principal of Capriati were property of Capriati's bankruptcy estate or of the reorganized debtor; therefore, SPER's pursuit of those

claims prior to confirmation of Capriati's chapter 11[3] plan violated the automatic stay and violated the discharge and/or plan injunction once Capriati's plan was confirmed. Capriati also appeals the court's order denying reconsideration. We VACATE and REMAND.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**A. The parties**
Capriati is a construction company that historically generated average annual income of $55–$65 million, primarily from public work projects. The recent recession ultimately led Capriati to file for bankruptcy relief. David Rocchio, Sr. is the owner, sole shareholder and person in control of Capriati.

SPER is a corporate entity owned by Susan Frankewich, Esq., through which she conducts her law practice. Frankewich has practiced bankruptcy law for over 30 years. Frankewich was the attorney for Rocchio and his various entities from 2003 to mid 2015. Rocchio did not sign any retention agreements with SPER/Frankewich individually and was not a guarantor for any unpaid legal fees owed by his various entities, including Capriati.

**B. Capriati's bankruptcy filing, the state court action and the chapter 11 plan**
Capriati filed its chapter 11 bankruptcy case on October 7, 2015. The court subsequently approved Capriati's application to employ Kung & Brown as its bankruptcy counsel. SPER later filed an unsecured proof of claim for Capriati's unpaid legal fees of $109,459.50.

One week later, SPER, represented by Frankewich, sued Rocchio and his entities in state court for Capriati's unpaid legal fees, alleging breach of contract, monies owed, quantum meruit, misrepresentation, alter ego, and fraudulent transfer. SPER did not name Capriati as a defendant, but SPER's claims for alter ego and fraudulent transfer alleged that Rocchio (and the other defendants) manipulated and transferred assets and funds between Capriati and themselves to avoid payment of creditors, including SPER. SPER requested that Rocchio be declared the alter ego of Capriati and be held liable for any judgment.

Rocchio retained Capriati's bankruptcy counsel, Kung & Brown, to file a motion to dismiss the state court action

Case 2:22-ap-01064-VZ    Doc 13    Filed 04/07/22    Entered 04/07/22 22:57:18    Desc
Main Document      Page 31 of 40

In re Capriati Construction Corporation, Inc., Not Reported in B.R. Rptr. (2018)

as to all defendants. Rocchio argued that, because SPER's fraudulent transfer claim alleged that Capriati fraudulently conveyed assets prior to its filing bankruptcy, such claim had to be heard by the bankruptcy court. In opposition to SPER's later summary judgment motion, Rocchio argued that SPER could not recover Capriati's debt from him or his entities under an alter ego theory, because Capriati had to be named as a necessary and indispensable party but could not be due to the bankruptcy stay. Rocchio also argued that, to the extent any alleged transfers from Capriati to Rocchio were avoidable, they would be reclaimed as property of Capriati's bankruptcy estate; thus, SPER was impermissibly seeking recovery against property of the estate.

**\*2** Kung & Brown thereafter filed a supplement to its employment application, disclosing to the bankruptcy court that the firm had represented Rocchio in the state court action. Kung & Brown asserted that its limited representation of Rocchio and his entities did not create a conflict of interest in Capriati's pending bankruptcy but rather preserved estate assets and prevented further violation of the automatic stay. Kung & Brown maintained that any alleged claims of alter ego and fraudulent transfers by Capriati to Rocchio and his entities were claims belonging to Capriati's bankruptcy estate, and so the firm had to act quickly to ensure that SPER did not usurp estate assets. Both Kung & Brown and Rocchio represented that Rocchio had no adverse interests to the Capriati estate.

Capriati filed various reorganization plans and disclosure statements. SPER was the only party to oppose confirmation of Capriati's third amended plan of reorganization, which ultimately became the confirmed plan ("Plan"). In each of its objections to Capriati's disclosure statements, proposed plans and Plan confirmation, SPER alleged that Capriati was not accounting for avoidable fraudulent transfers involving Capriati, Rocchio, his other entities and his family members. In response to one of SPER's objections, Capriati's financial expert opined that either the transfers alleged by SPER were not avoidable fraudulent transfers, or, to the extent that any were avoidable, no benefit existed for the estate and creditors because any amount recovered would not be collectible. In short, the cost of pursuing such claims exceeded any likely recovery.

After a two-day confirmation trial, at which the bankruptcy court considered SPER's allegations of fraudulent transfers involving Capriati, the court entered an order confirming the Plan. The Plan provisions relevant here are:

**9.1. Vesting of Assets.** Subject to the provisions of this Plan and as permitted by Section 1123(a)(5)(B) of the Bankruptcy Code, the Assets, **including the Litigation Claims**[4] and right, title, and interest being assumed by Reorganized Debtor in the assumed Executory Contracts, **shall be transferred to Reorganized Debtor on the Effective Date**.

**9.2. Preservation of Litigation Claims.** In accordance with Section 1123(b)(3) of the Bankruptcy Code, and except as otherwise expressly provided herein, **all Litigation Claims shall be assigned and transferred to Reorganized Debtor**. **Reorganized Debtor**, as the successor in interest to Debtor and the Estate, **may and shall have the exclusive right to sue on, settle, or compromise any and all Litigation Claims, including derivative actions existing against Debtor on the Effective Date**.

**9.4. Injunction.** From and after the Effective Date ... **all entities that have held, currently hold, or may hold a Claim** ... that is terminated pursuant to the terms of this Plan **are permanently enjoined from** taking any of the following actions on account of any such Claims ... : (I) **commencing or continuing in any manner any action** or other proceeding **against Reorganized Debtor or its property**[.]

(Emphasis added).

## C. Capriati's motion for contempt

More than a year after SPER was on notice that the fraudulent transfer and alter ego claims alleged in the state court action were property of the estate or of the Reorganized Debtor, SPER filed another amended complaint in the state court action, this time asserting claims against just Rocchio for Capriati's unpaid legal fees, including claims for fraudulent transfer and alter ego. Capriati was not named as a defendant, but SPER alleged that Rocchio had caused Capriati to transfer its assets to him to avoid paying creditors, including SPER. SPER again requested that Rocchio be declared the alter ego of Capriati.

**\*3** In response, Capriati filed a motion for contempt in the bankruptcy court, seeking sanctions against SPER for its alleged violations of the automatic stay and the discharge and/or Plan injunction ("Contempt Motion"). Capriati argued that SPER's fraudulent transfer and alter ego claims, which alleged only general claims of injury to all creditors of Capriati,

were property of the estate that could only be pursued by Capriati and which revested in the Reorganized Debtor upon confirmation; thus, SPER's state court action pursuing those claims after Capriati's bankruptcy filing and prior to Plan confirmation violated the automatic stay under § 362(a)(3) and violated the Plan injunction after confirmation. Capriati requested sanctions against SPER of $25,000 plus attorney's fees.

In opposition, SPER argued that Capriati was judicially estopped from claiming that the fraudulent transfer and alter ego claims were estate assets: Capriati never disclosed any possible avoidance actions against Rocchio in its schedules or statements of financial affairs; at no time prior to confirmation did Capriati ever amend its schedules or statements of financial affairs to disclose the fraudulent transfer and alter ego claims; neither the Plan nor confirmation order reserved or disclosed the claims as a "litigation asset" of the estate; the expert report minimized the value of any fraudulent transfer claim; and the approved disclosure statement disavowed the existence of any such claim. Therefore, argued SPER, Capriati could not now assert that the fraudulent transfer and alter ego claims were estate assets, when Capriati had previously and successfully asserted before the bankruptcy court in connection with Plan confirmation that no such claims existed.

Next, SPER argued that Rocchio, a non-debtor, was not protected by the automatic stay or Capriati's discharge. SPER maintained that the claims against Rocchio in the state court action were "direct" claims against him under Nevada law, not derivative corporate claims. SPER argued that at least $1,285,500 in Capriati distributions to Rocchio were recoverable for unsecured creditors, which was more than double what they were getting under the Plan.

In reply, Capriati maintained that it did not list any avoidance actions against Rocchio in its schedules or statements of financial affairs because it never believed that any such claims existed. Moreover, the alleged excessive salary payments to Rocchio were the subject of SPER's many objections and the crux of its objection to Plan confirmation, which SPER fully litigated at the confirmation trial. Capriati maintained that SPER's allegations of fraudulent transfers were without merit or support in fact or law; SPER presented no witnesses at the confirmation trial and entered only one document into evidence—Capriati's financial expert's report—which concluded that no viable fraudulent transfer or avoidance actions against Rocchio existed.

At the Contempt Motion hearing, counsel for SPER conceded that SPER had no "direct" claim against Rocchio individually and independent from Capriati, but then argued that SPER had a direct, in personam claim against Rocchio as "transferee" of a fraudulent conveyance. Counsel maintained that such claim did not violate the automatic stay or the Plan injunction, because it was not an action to recover the asset for the benefit of Capriati's estate.

### D. The bankruptcy court's ruling on the Contempt Motion

The bankruptcy court first determined that the Contempt Motion failed on the basis of judicial estoppel. The court focused on Capriati's prior statement that it did not believe any fraudulent transfer and alter ego claims against Rocchio existed and was unaware of any such claims. To the extent Capriati believed otherwise, Capriati never disclosed the claims in its bankruptcy papers filed under oath. Thus, because of its failure to disclose and outright denial of the existence of any such claims against Rocchio, the court reasoned that Capriati was judicially estopped from now taking the inconsistent position that such claims were estate assets revested in the Reorganized Debtor upon confirmation of the Plan.

*4 Alternatively, the court held that the Contempt Motion failed because neither the automatic stay nor the discharge injunction applied to Rocchio, a non-debtor Capriati officer and insider. Sections 9.4 and 9.5 of the Plan prohibited post-confirmation and post-discharge actions against the Reorganized Debtor or its property but excepted direct liability claims against Capriati's officers and other insiders. The court summarily concluded that SPER's claims for fraudulent transfer and alter ego were "direct" claims against Rocchio individually and therefore not protected by the automatic stay or the discharge and/or Plan injunction.

Finally, the court found that Capriati failed to meet its burden of proving either a willful violation of the automatic stay or the discharge injunction; SPER legitimately believed that its claims in the state court action were against Rocchio individually.

### E. Capriati's motion for reconsideration

Capriati timely moved for reconsideration of the Contempt Order. The bankruptcy court denied the motion, determining that Capriati had not presented any grounds for reconsideration.

32

Case 2:22-ap-01064-VZ    Doc 13    Filed 04/07/22    Entered 04/07/22 22:57:18    Desc
Main Document    Page 33 of 40

In re Capriati Construction Corporation, Inc., Not Reported in B.R. Rptr. (2018)

This timely appeal followed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court err by determining that SPER had not willfully violated the automatic stay or the Plan injunction without determining first whether the fraudulent transfer and alter ego claims were either property of the estate or property of the Reorganized Debtor?

2. Did the bankruptcy court err in determining that SPER had not willfully violated the automatic stay or the Plan injunction and therefore abused its discretion by not holding SPER in contempt?

3. Did the bankruptcy court abuse its discretion by invoking judicial estoppel to deny the Contempt Motion?

4. Did the bankruptcy court abuse its discretion in denying the motion to reconsider?

## IV. STANDARDS OF REVIEW

Determining whether the bankruptcy court applied the correct legal standard is a question of law reviewed de novo. Emmert v. Taggart (In re Taggart), 548 B.R. 275, 286 (9th Cir. BAP 2016). An erroneous view of the law may induce the bankruptcy court to make a clearly erroneous finding of fact. Ozenne v. Bendon (In re Ozenne), 337 B.R. 214, 218 (9th Cir. BAP 2006) (citing Power v. Union Pac. R.R. Co., 655 F.2d 1380, 1382–83 (9th Cir. 1981) ).

Whether property is included in a bankruptcy estate is a question of law subject to de novo review. Cisneros v. Kim (In re Kim), 257 B.R. 680, 684 (9th Cir. BAP 2000).

We review for abuse of discretion the bankruptcy court's decision to apply judicial estoppel, or preclusion of inconsistent positions, to the facts of a case. Hamilton v. State

Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001); Diamond Z Trailer, Inc. v. JZ L.L.C. (In re JZ L.L.C.), 371 B.R. 412, 416 (9th Cir. BAP 2007).

We review for an abuse of discretion the bankruptcy court's decision whether to hold a party in civil contempt. Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003); Rediger Inv. Servs. v. H. Granados Commc'ns, Inc. (In re H Granados Commc'ns, Inc.), 503 B.R. 726, 731 (9th Cir. BAP 2013). The underlying factual findings are reviewed for clear error. In re Dyer, 322 F.3d at 1191; In re H Granados Commc'ns, Inc., 503 B.R. at 731–32. A finding is clearly erroneous when it is illogical, implausible or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

We review for an abuse of discretion the bankruptcy court's decision to deny a reconsideration motion under Civil Rule 59. Ybarra v. McDaniel, 656 F.3d 984, 998 (9th Cir. 2011); Cruz v. Stein Strauss Tr. # 1361, PDQ Invs., LLC (In re Cruz), 516 B.R. 594, 601 (9th Cir. BAP 2014).

 **\*5** A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if it makes factual findings that are illogical, implausible or without support in inferences that may be drawn from the facts in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

## V. DISCUSSION

**A. The bankruptcy court's failure to determine ownership of the fraudulent transfer and alter ego claims led to error.**
The bankruptcy court denied the Contempt Motion in the first instance based on its determination that judicial estoppel barred the relief sought by Capriati, and second, summarily, on the alternative grounds that the automatic stay and discharge and/or Plan injunction did not apply to preclude SPER's filing and pursuit of its "direct" claims for fraudulent transfer and alter ego against Rocchio, a non-debtor third party and Capriati insider. The bankruptcy court never determined whether the fraudulent transfer and alter ego claims were property of the estate or property of the Reorganized Debtor. This approach puts the cart before the horse. The omission led to the erroneous or incomplete finding that SPER's claims for fraudulent transfer and alter ego were exclusively "direct" claims against Rocchio; the

WESTLAW    © 2022 Thomson Reuters. No claim to original U.S. Government Works.    4

Case 2:22-ap-01064-VZ   Doc 13   Filed 04/07/22   Entered 04/07/22 22:57:18   Desc
Main Document    Page 34 of 40

In re Capriati Construction Corporation, Inc., Not Reported in B.R. Rptr. (2018)

record and the law are to the contrary. And this conclusion improperly colored the determinations that followed.

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). A debtor's "causes of action" are "property of the estate." Smith v. Arthur Andersen LLP, 421 F.3d 989, 1002 (9th Cir. 2005) (citing United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n.9 (1983) ). Thus, the trustee, or in this case the debtor-in-possession, stands in the shoes of the debtor corporation and has standing to bring any suit that the debtor corporation could have instituted had it not filed for bankruptcy relief. Id. The trustee's standing to sue on behalf of the estate is exclusive; a debtor's creditors cannot prosecute such claims belonging to the estate absent abandonment. Estate of Spirtos v. One San Bernardino Cty. Super. Ct., 443 F.3d 1172, 1175 (9th Cir. 2006).

Furthermore, § 1141(b) "vests **all** of the property of the estate, scheduled and unscheduled, in the debtor upon plan confirmation, unless the court or plan provides otherwise." In re JZ L.L.C., 371 B.R. at 418 (emphasis in original). Hence, because of § 1141(b), the general rule under § 554(d)—that property of the estate that is not scheduled and not otherwise administered before the case is closed and is not abandoned to the debtor at the time of closing, but rather remains property of the estate, forever—does not apply. Id. Thus, even undisclosed assets in a chapter 11 case vest in the debtor under § 1141(b), unless the plan provides otherwise. Id. at 419. Section 9.1 of the Plan provides that all Litigation Claims, including all known or unknown causes of action, Avoidance Actions and derivative actions, vested in the Reorganized Debtor on the effective date. This is not inconsistent with § 1141(b).

### 1. The fraudulent transfer claim

The crux of SPER's fraudulent transfer claim was Capriati's alleged over-payment of salary to Rocchio, which SPER argued was a transfer in fraud of all creditors and harmful to Capriati. In other words, SPER's complaint alleged a direct injury to Capriati, from which an injury to SPER was derived. "If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate." Schertz–Cibolo–Universal City, Indep. Sch. Dist. v. Wright (In re Educators Grp. Health Tr.), 25 F.3d 1281, 1284 (5th Cir. 1994).

**\*6** We conclude that SPER's fraudulent transfer claim asserted in the state court action was property of Capriati's bankruptcy estate by virtue of § 544(b) once Capriati filed its bankruptcy petition, and such claim could only be pursued by Capriati. § 548(a); The Cadle Co. v. Mims (In re Moore), 608 F.3d 253, 261 (5th Cir. 2010) (fraudulent transfer claims become estate property "once bankruptcy is under way" by virtue of trustee's successor rights under § 544(b) ); Nat'l Tax Credit Partners, L.P. v. Havlik, 20 F.3d 705, 708–09 (7th Cir. 1994) (same). See also Whiting Pools, Inc., 462 U.S. at 205 ("Section 541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code," which would include property made available through § 544).

We reject SPER's argument that it could pursue a direct claim against Rocchio as the "transferee" of a fraudulent transfer under Nevada law, namely NRS 112.220, which provides for recovery of the value of the asset transferred from the transferee, during the chapter 11 case. That statute does not consider the effect of a corporate debtor's bankruptcy filing and the fact that a prepetition claim for injury to the debtor by an insider's fraudulent transfers is property of the corporate debtor's estate.

### 2. The alter ego claim

Whether the alter ego claim was property of the estate or of the Reorganized Debtor is not as easy to determine. The alter ego doctrine is used to establish the direct liability of a shareholder when that shareholder improperly uses the corporate entity to commit acts which harm the corporation. Here, SPER alleged a traditional veil-piercing (alter ego) claim, whereby a creditor attempts to place liability for a debtor-corporation's obligations on its shareholders.

Whether an alter ego claim is property of the bankruptcy estate depends on two things: (1) whether under state law where the corporate debtor is incorporated, the debtor is permitted to pierce its own corporate veil; and (2) whether the claim is a general one, of the type that could be brought by any creditor of the debtor. Kalb, Voorhis & Co. v. Am. Fin. Corp., 8 F.3d 130, 132–33 (2d. Cir. 1993); S.I. Acquistion, Inc. v. Eastway Delivery Serv., Inc., 817 F.2d 1142, 1152–53 (5th Cir. 1987); CBS, Inc. v. Folks (In re Folks), 211 B.R. 378, 384, 387 (9th Cir. BAP 1997), rev'd on other grounds by Ahcom, Ltd. v. Smeding, 623 F.3d 1248 (9th Cir. 2010) ; Murray v. Miner, 876 F. Supp. 512, 516 (S.D.N.Y. 1995); In re Davey Roofing Inc., 167 B.R. 604, 608 (Bankr. C.D. Cal. 1994), rev'd on other grounds by Ahcom, Ltd. v. Smeding,

34

Case 2:22-ap-01064-VZ    Doc 13    Filed 04/07/22    Entered 04/07/22 22:57:18    Desc
Main Document    Page 35 of 40

In re Capriati Construction Corporation, Inc., Not Reported in B.R. Rptr. (2018)

623 F.3d 1248 (9th Cir. 2010). If the answer to both of these questions is yes, then the alter ego claim is property of the estate, belongs to the trustee or debtor-in-possession, and cannot belong to any individual creditor. In re Folks, 211 B.R. at 387 (citing Davey Roofing, Inc., 167 B.R. at 606). "This rule ensures that all of a debtor's creditors receive equal treatment: otherwise, those who asserted alter ego claims first would obtain payment of the claims in preference to and to the detriment of other creditors, despite having no greater claim on the alter ego's assets." Murray, 876 F. Supp. at 516 (internal quotation marks and citation omitted).

Despite SPER's assertion and the bankruptcy court's finding to the contrary, the alter ego claim alleged here was a general, as opposed to a personal or individualized, claim. "A cause of action is personal if the claimant himself is harmed and no other claimant or creditor has an interest in the cause." In re Folks, 211 B.R. at 387 (internal quotation marks and citation omitted). "A general claim exists if the liability is to all creditors of the corporation without regard to the personal dealings between such officers and such creditors." Id. (internal quotation marks and citation omitted). In other words, if the alter ego claim alleges acts that harmed the financial condition of the corporation as a whole and all creditors equally, such claims are general alter ego claims. Id. See Kalb, Voorhis & Co., 8 F.3d at 133; In re Davey Roofing, Inc., 167 B.R. at 608.

**\*7** SPER's alter ego claim alleging that Rocchio (1) had failed to observe corporate formalities with respect to Capriati, (2) used corporate funds for his own personal use, and (3) had manipulated Capriati's assets and funds to avoid payment of creditors was a general claim because all creditors are affected; no particularized injury to SPER existed that could not be brought by other Capriati creditors harmed by Rocchio's alleged bad acts. Accordingly, the bankruptcy court clearly erred to the extent that it found SPER had a "direct" or personal alter ego claim against Rocchio that was not an asset of the chapter 11 estate.

As for the question of whether Capriati could pierce its own corporate veil, the parties have been operating under the assumption that Nevada alter ego law applies. However, Capriati is a Rhode Island corporation. Thus, as noted above, Rhode Island alter ego law applies.

Rhode Island recognizes the equitable doctrine of alter ego. McFarland v. Brier, 769 A.2d 605, 613 (R.I. 2001) (alter ego doctrine permits creditors of a corporation to reach assets of

individual(s) that control the corporation). However, we could not locate any Rhode Island Supreme Court case answering the question of whether a corporation may pierce its own veil.

In any event, the general rule in most (if not all) states is that "alter ego" is not an independent cause of action, but is an equitable remedy—a legal theory or doctrine used to impose liability against the alter ego defendant under another cause of action.[5] We could not locate a Rhode Island Supreme Court case stating whether this is the law in Rhode Island, but based on that Court's use of the terms "equitable" and "doctrine" in cases discussing alter ego, we can assume that Rhode Island follows this general rule. See Heflin v. Koszela, 774 A.2d 25, 30 (R.I. 2001) ("To invoke the equitable alter ego doctrine ....").

Thus, we question what value SPER's alter ego claim has as a remedy absent the ability to pursue the fraudulent transfer claim.

### 3. SPER violated the automatic stay

The bankruptcy court determined that SPER could not have violated the automatic stay by filing and pursuing its "direct" claims for fraudulent transfer and alter ego against Rocchio individually in the state court action. We do not argue the point that generally a non-debtor is not protected by the automatic stay. However, as we have determined, SPER's fraudulent transfer claim was not a "direct" claim against Rocchio, because it became property of the estate once Capriati filed its bankruptcy case.

The automatic stay continues to protect property of the estate so long as it retains that status. § 362(c)(1). While the automatic stay did not apply to Rocchio, it did apply to claims against property of the estate prior to confirmation under § 362(a)(3).[6] As a result, SPER violated the automatic stay when it asserted the fraudulent transfer and related alter ego claims in its state court complaint. And acts in violation of the stay are void, absent an annulment of the stay. SPER cannot rely on those claims for relief either as initially pled or as amended. Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571 (9th Cir. 1992) (actions taken in violation of the automatic stay are void).

**\*8** Whether SPER has a post-Plan confirmation "direct" claim is an issue for further consideration, but it must assert such a claim as a new matter after confirmation and without reliance on void assertions during the course of the case.

Case 2:22-ap-01064-VZ   Doc 13   Filed 04/07/22   Entered 04/07/22 22:57:18   Desc
Main Document   Page 36 of 40

In re Capriati Construction Corporation, Inc., Not Reported in B.R. Rptr. (2018)

However, SPER's new attempt would remain subject to potentially successful attack based on the discharge and Plan injunction and subject to defenses such as the statute of limitations, as applicable.

Section 362(k) permits the recovery of damages resulting from a stay violation. This subsection, however, applies only to individuals, not corporations. In re H Granados Comme'ns, Inc., 503 B.R. at 733. Nonetheless, a corporation may be entitled to recovery for a stay violation under § 105(a) as a sanction for civil contempt. Id.

To find a party in civil contempt for a stay violation, the threshold inquiry focuses on a finding of "willfulness." Id. (citing In re Dyer, 322 F.3d at 1191). The bankruptcy court must find that: (1) the party knew of the automatic stay; and (2) the party's actions that violated the stay were intentional. Id. Whether the party exhibited bad faith or had a subjective intent to violate the stay is irrelevant. Id. The movant bears the burden of showing by clear and convincing evidence that the party violated the stay. Id.

SPER has never claimed that it did not receive notice of Capriati's bankruptcy filing. Indeed, it was careful not to include Capriati as a defendant in the state court action, filed just one week after Capriati filed its chapter 11 case. Further, Frankewich, a bankruptcy attorney of over 30 years, is certainly familiar with the rules of the automatic stay and knew or should have known that usurping property of the bankruptcy estate is a willful violation of the automatic stay. Her subjective belief that the claims in the state court action were against Rocchio only and not Capriati makes no difference for purposes here, despite the bankruptcy court's ruling to the contrary. Because the court applied an incorrect legal standard, its finding that SPER had not willfully violated the automatic stay is clearly erroneous. In re Ozenne, 337 B.R. at 218.

The record supported a determination that SPER willfully violated the automatic stay by filing and continuing to pursue the fraudulent transfer claim against Rocchio in the state court action after Capriati filed its bankruptcy case and prior to confirmation of the Plan. Therefore, the bankruptcy court abused its discretion by not holding SPER in contempt.

### 4. Whether SPER violated the discharge and/or Plan injunction can be determined on remand.

Per § 1141(b) and Sections 1.1.41, 9.1, 9.2 and 9.4 of the Plan, the fraudulent transfer claim (and maybe the alter ego claim

if viable under Rhode Island law and if it was property of the estate) appears to be a "Litigation Asset" that reverted to the Reorganized Debtor upon confirmation of the Plan, gave the Reorganized Debtor exclusive right to sue on, settle or compromise that claim, and permanently enjoined any other parties from commencing or continuing any action regarding that claim. Capriati argues that the bankruptcy court erred by not holding SPER in contempt for willfully violating the Plan injunction and confirmation order, when it was clear that SPER was attempting to take control over claims belonging to the Reorganized Debtor.

The contempt remedy is also available with respect to violations of the discharge injunction under § 105(a). ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.), 450 F.3d 996, 1007 (9th Cir. 2006); Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 507 (9th Cir. 2002); In re Taggart, 548 B.R. at 286. The party seeking contempt sanctions has the burden of proving, by clear and convincing evidence, that the alleged contemnor "(1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." In re ZiLOG, Inc., 450 F.3d at 1007; Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002) ("The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court."). Knowledge of the injunction is a question of fact that can normally be resolved only after an evidentiary hearing. In re ZiLOG, Inc., 450 F.3d at 1007. However, where the facts are not in dispute, no hearing need be held. Id. at 1007 n.11 (citing In re Dyer, 322 F.3d at 1191–92).

**\*9** Here, the bankruptcy court applied the correct legal standard for a willful violation of the discharge or Plan injunction. It is undisputed that SPER knew of the Plan injunction and confirmation order given its objections to Plan confirmation, which were overruled at the confirmation trial, and that SPER continued to pursue the state court action post-confirmation. However, it is not clear on this record whether SPER was aware that the Plan injunction **applied** to its claims against Rocchio for fraudulent transfer and alter ego. The bankruptcy court may need to conduct an evidentiary hearing on remand to make that determination.

### B. We need not decide whether the bankruptcy court abused its discretion by invoking judicial estoppel to deny the Contempt Motion.

Capriati argues that the bankruptcy court misapplied and grossly over-extended the doctrine of judicial estoppel. We do

Case 2:22-ap-01064-VZ   Doc 13   Filed 04/07/22   Entered 04/07/22 22:57:18   Desc
Main Document   Page 37 of 40

In re Capriati Construction Corporation, Inc., Not Reported in B.R. Rptr. (2018)

not fault the court for wanting to apply some sort of equitable doctrine in this case to deny Capriati's request for monetary damages for contempt, which is all it requested. Like the bankruptcy court, we question why a corporate debtor like Capriati would concern itself with a creditor's pursuit of a third party, albeit a corporate insider, in state court. The fairly obvious reason Capriati was seeking monetary damages for contempt in the bankruptcy court was to protect and benefit Rocchio, Capriati's principal and sole shareholder.

Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position, either in the same or different actions. Hamilton, 270 F.3d at 782–83. The court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, "but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts." Id. (internal quotation marks and citation omitted).

Although Capriati as a chapter 11 debtor-in-possession and revested debtor had exclusive standing to sue on causes of action that were property of the estate, that right is subject to certain equitable constraints. In re JZ, L.L.C. 371 B.R. at 418; § 1107.[7] As the Panel has noted:

> Section 1141(b) vesting does not mean that a debtor necessarily has unfettered control over property of the estate. It neither authorizes nor condones mischief, such as omitting to schedule property. For that reason, equitable constraints may be imposed in order to preserve the integrity of the system. In principle, the full panoply of equitable remedies, from constructive trust through equitable and judicial estoppel, are available to assure that debtors do not overreach.

In re JZ L.L.C., 371 B.R. at 420. Accordingly, as JZ L.L.C. instructs, the bankruptcy court had discretion to apply an equitable doctrine like judicial estoppel to deny Capriati contempt damages. We simply disagree that applying the doctrine without recognizing that a stay violation occurred

and that SPER continues to rely on void claims for relief is appropriate.

On remand, the bankruptcy court may certainly revisit any equitable doctrine it deems appropriate to deny contempt damages to Capriati.

**C. The bankruptcy court abused its discretion in denying the motion to reconsider.**

A motion under Civil Rule 59(e) should not be granted unless the court is presented with newly discovered evidence, committed clear error, or if there is an intervening change of controlling law. 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999). Capriati asked the bankruptcy court to reconsider its ruling on the Contempt Motion, arguing that the court had erred when it determined that (1) SPER had a direct claim against Rocchio, (2) that judicial estoppel authorized the court to allow a single creditor to bring postpetition and post-confirmation fraudulent transfer and alter ego claims, which were property of the estate and of the Reorganized Debtor, for the creditor's sole benefit, and that (3) SPER had not willfully violated the automatic stay or Plan injunction. Because we have determined that the court applied incorrect standards of law and made clearly erroneous findings of fact based on its erroneous view of the law, it abused its discretion by not granting Capriati's motion to reconsider.[8]

**VI. CONCLUSION**

 **\*10**   For the foregoing reasons, we VACATE and REMAND the Contempt Order for the bankruptcy court to determine what sanctions are appropriate for SPER's willful violation of the automatic stay and perhaps willful violation of the Plan injunction. We leave to the court's discretion as to whether any further proceedings are necessary for it to make that determination.

**All Citations**

Not Reported in B.R. Rptr., 2018 WL 1404439

---

Footnotes

1   Hon. Mark D. Houle, Bankruptcy Judge for the Central District of California, sitting by designation.

2   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024–1.

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.                    8

Case 2:22-ap-01064-VZ   Doc 13   Filed 04/07/22   Entered 04/07/22 22:57:18   Desc
Main Document    Page 38 of 40

In re Capriati Construction Corporation, Inc., Not Reported in B.R. Rptr. (2018)

3    Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001–9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

4    Section 1.1.41 of the Plan defined "Litigation Claims" as "[a]ll rights, claims, torts, liens, liabilities, obligations, actions, causes of action, Avoidance Actions [including under §§ 544, 548, 550 & 551] derivative actions, proceedings, debts, contracts, judgments, damages and demands whatsoever in law or in equity, whether known or unknown, contingent or otherwise, that Debtor or the Estate may have against any Person."

5    For example, in California "[a] claim against a defendant, based on the alter ego theory, is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural ..." Hennessey's Tavern, Inc. v. Am. Air Filter Co., 204 Cal. App. 3d 1351, 1359 (1988). "Alter ego is merely a legal theory, or doctrine, employed to make a substantive cause of action applicable to the 'alter ego defendant' where otherwise that claim could only be stated against the corporate entity." Id.

6    Under § 362(a)(3), the automatic stay prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

7    Under § 1107(a), the debtor in possession is vested with the rights, powers, and duties of a trustee, including the right to sue and be sued. See § 323(b) (trustee has capacity to sue and be sued).

8    SPER requests sanctions against Capriati for filing a frivolous appeal. First, Capriati has prevailed in this appeal. In addition, we deny SPER's request because it fails to comply with Rule 8020, which requires a party to request sanctions for a frivolous appeal by separate motion. State of Cal. Emp't Dev. Dep't v. Taxel (In re Del Mission Ltd.), 98 F.3d 1147, 1154 (9th Cir. 1996).

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 535 Anton Blvd., Ninth Floor, Costa Mesa, CA 92626.

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S OPPOSITION TO JUDGMENT CREDITORS' MOTION TO REMAND STATE COURT ACTION TO CALIFORNIA SUPERIOR COURT** will be served in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **04/7/2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **04/07/2022**  I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) **04/07/2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Hon. Vincent P. Zurzolo (overnight – Federal Express)
United States Bankruptcy Court
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1360
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 04/07/2022 | Sara Tena | /s/ Sara Tena |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1250627.12/81961.82002 This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    29    **F 9013-3.1.PROOF.SERVICE**

39

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Anthony Bisconti**    tbisconti@bklwlaw.com,
  4579179420@filings.docketbird.com;docket@bklwlaw.com
- **William N Lobel**    wlobel@tocounsel.com, stena@tocounsel.com;sschuster@tocounsel.com
- **Jessica Taran**    jtaran@jtaranlaw.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov


2. **SERVED BY UNITED STATES MAIL**

Keith A. Fink
Keith A Fink & Associates
11500 Olympic Blvd Ste 316
Los Angeles, CA 90064

---

1250627.12/81961.82002 This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**